**RICHMOND, F. & P. R. CO. v. EARLY, Collector of Internal Revenue for the District of Virginia.**

No. 4291.

Circuit Court of Appeals, Fourth Circuit.

June 6, 1938.

E. Randolph Williams, of Richmond, Va. (Edmund M. Preston, of Richmond, Va., on the brief), for appellant.

J. Louis Monarch, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., Seawall Key. Sp. Asst. to Atty. Gen., and Sterling Hutcheson, U. S. Atty., of Richmond, Va., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

Richmond, Fredericksburg and Potomac Railroad Company sued the Collector of Internal Revenue to recover the sum of $50,169.51 which the Railroad Company had paid to the Collector under protest on ac-

count of additional assessments of income taxes for the years 1920 and 1922 levied by the Commissioner of Internal Revenue in 1934. The deficiencies upon which the assessments were based consisted of income payable by the Railroad Company to the Interstate Commerce Commission under the recapture clause (section 15a) of the Transportation Act of February 28, 1920, 41 Stat. 456, 488, 49 U.S.C.A. § 15a; and the assessments thereon were made after the passage of the Emergency Railroad Transportation Act of June 16, 1933 (section 206) 48 Stat. 211, 220, 49 U.S.C.A. § 15b; whereby the recapture clause was nullified, and the Secretary of the Treasury was directed to return to the carriers all monies paid thereunder. Broadly stated, the position of the Railroad Company is that the statutes relating to recaptured income did not confer any authority upon the Commissioner to make the additional assessments in 1934, and that the Railroad Company had not waived the limitations of time imposed by the general income tax statutes with respect to assessments.

On April 11, 1921 the taxpayer filed an income tax return for the year 1920 and paid the amount of the tax shown by the return to be due. Similarly, the taxpayer filed a return on March 14, 1923 for the year 1922 and paid the amount of the indicated tax. Waivers were executed in due time extending the period of assessment of additional taxes for these two years until December 31, 1927. The Commissioner reexamined these returns, determined a deficiency in tax of $155,504.64 for the years 1920 and 1922, and on January 29, 1927 mailed to the taxpayer the usual sixty day letter. The taxpayer appealed to the Board

of Tax Appeals and brought to its attention that although hearings had been held by the Interstate Commerce Commission with reference to the amount payable by the taxpayer under the recapture clause for the years 1920 to 1923, no decision had been made, and that until these matters were settled, the amount of income taxes payable could not be ascertained.

On July 29, 1931, an agreement between the parties in this proceeding before the Board was reached, wherein it was stipulated that there were deficiencies in the taxes for the years 1920 and 1922 in the aggregate sum of $108,571.25, subject, however, to such adjustments as might become necessary when the amount of income subject to recapture should have been finally determined; and that in the meantime the case should remain upon the reserve calendar of the Board. In arriving at this amount, the taxpayer was allowed to exclude recaptured accruals in the amount of $62,963.74 for 1920 and $130,656.73 for 1922. In accordance with the stipulation the taxpayer signed a waiver of restriction on the assessment and collection of deficiencies of tax for the years in question.

Such was the situation when Congress enacted section 1107 as part of the Revenue Act of June 6, 1932, 47 Stat. 169, 287.[1] This section provides in substance that the Interstate Commerce Commission, after determining the amount recoverable for any year from any carrier under section 15a of the Transportation Act, and after such amount, if any, had been paid, should certify the amount so paid to the Commissioner of Internal Revenue; and if the amount so paid should differ from the amount allowed in computing the income tax of the carrier for the year, the Commissioner should de-

---

[1] "Sec. 1107. *Adjustments of Carriers' Tax Liabilities to Conform to Recapture Payments.* The Interstate Commerce Commission shall, as soon as practicable after its order with respect to the amount recoverable from any carrier under the provisions of section 15a of the Interstate Commerce Act, as amended, for any year or portion thereof has become final, and such amount, if any, has been paid, certify to the Commissioner of Internal Revenue the amount so paid. If the amount so paid by such carrier differs from the amount allowed as so recoverable in computing the income or excess profits tax liabilities for any taxable period of such carrier, or of any corporation whose income or excess profits tax liability is affected, the Commissioner of Internal Revenue shall determine any deficiency or overpayment attributable to such difference. Notwithstanding any other provision of law, (1) any such deficiency may be assessed within two years from the date of such certification, and, if so assessed, shall be paid upon notice and demand from the collector, and (2) any such overpayment may be credited or refunded within two years from the date of such certification, but not after unless, before the expiration of such period, a claim therefor is filed. This section shall not be held to affect the provisions of section 1106 (b) of the Revenue Act of 1926 or 606 of the Revenue Act of 1928." U.S.C. Title 26, Sec. 325, 26 U.S.C.A. § 325.

termine the resulting deficiency or over- payment of tax. It was further provided, notwithstanding any other provision of law, that any such deficiency might be assessed within two years from the date of the cer- tificate and should be paid upon notice and demand of the collector; and that any such overpayment might be credited or refunded within two years from the date of certifica- tion but not later, unless claim therefor should be filed within the period.

The Board of Tax Appeals was anxious that its docket be cleared of the cases of carriers on its reserve calendar, and accord- ingly it was suggested by the general coun- sel for the Bureau of Internal Revenue that in view of the corrective provisions of sec- tion 1107 the taxpayer agree to a redeter- mination by the Board of Tax Appeals of the amount due by the taxpayer in the sum set out in the stipulation previously filed in the case. Counsel for the Railroad Com- pany expressed the fear that in case of an overpayment the railroad would be barred from recovery by limitations, if the Com- missioner should refuse to exercise the power of redetermination conferred upon him by section 1107 and the railroad should be compelled to bring suit therefor. The Commissioner expressed the view that the Railroad Company would have an adequate remedy in the courts in such a case. There- upon, on December 8, 1932 the parties, ex- pressly relying upon the provisions of sec-

tion 1107, agreed upon the deficiencies for the years 1920 and 1922 in the same amounts shown in the previous stipulation; the Board entered an order of redetermina- tion accordingly and the taxpayer paid the deficiencies.

In the following year Congress passed the Emergency Transportation Act of 1933. Section 206 of this act repealed the recap- ture provisions of the Transportation Act. Section 206(a)[2] provided in substance that all moneys recoverable by and payable to the Interstate Commerce Commission un- der the earlier act should cease to be so recoverable and payable, all proceedings for the recovery of such moneys should be terminated, and all moneys already paid by the carriers should be returned to them by the Secretary of the Treasury. Section 206 (b)[3] provides that the income tax for any period ending after February 28, 1920, of carriers whose liability was affected by section 15a of the Transportation Act should be computed as if such section had never been enacted; except that an amount equal to the payments made by carriers under section 15a should be excluded from their gross income and that all distribu- tions to carriers under section 206 (a) should be included in their gross income. It was further provided that section 206 (b) should not affect (1) the statutes of limitations with respect to the assessment, collection or refund of taxes, or (2) the

2 "[Sec. 206] (a) All moneys which were recoverable by and payable to the Interstate Commerce Commission, under paragraph (6) of section 15a of the In- terstate Commerce Act, [this chapter] as in force prior to the enactment of this title [June 16, 1933], shall cease to be so recoverable and payable; and all pro- ceedings pending for the recovery of any such moneys shall be terminated. The general railroad contingent fund establish- ed under such section shall be liquidated and the Secretary of the Treasury shall distribute the moneys in such fund among the carriers which have made payments under such section * * *."

3 "[Sec. 206] (b) The income, war-prof- its, and excess-profits tax liabilities for any taxable period ending after Febru- ary 28, 1920, of the carriers and corpora- tions whose income, war-profits, or excess- profits tax liabilities were affected by sec- tion 15a of the Interstate Commerce Act [this chapter] as in force prior to the en- actment of this Act [June 16, 1933], shall be computed as if such section had never been enacted, except that, in the case of carriers or corporations which have made

payments under paragraph (6) of such section, an amount equal to such pay- ments shall be excluded from gross in- come for the taxable periods with respect to which they were made. All distribu- tions made to carriers in accordance with subdivision (a) of this section shall be in- cluded in the gross income of the car- riers for the taxable period in which this Act [section] is enacted. The provisions of this subdivision shall not be held to affect (1) the statutes of limitations with respect to the assessment, collection, re- fund, or credit of income, war-profits or excess-profits taxes or (2) the liabilities for such taxes of any carriers or corpora- tions if such liabilities were determined prior to the enactment of this Act [June 16, 1933] in accordance with section 1106 (b) of the Revenue Act of 1926 or section 606 of the Revenue Act of 1928 [sec- tion 1249 of Title 26 or section 2606 of Title 26], or in accordance with a final judgment of a court, an order of the Board of Tax Appeals which had become final, or an offer in compromise duly ac- cepted in accordance with law." U.S.C. A. Title 49, Sec. 15b.

liabilities of carriers for taxes if previously determined in accordance with a final judgment of a court or a final order of the Board of Tax Appeals.

Shortly afterwards, an accountant from the Railroad Company conferred with officers of the Bureau with reference to the tax liabilities of the carrier for the years 1920 and 1922 and the figures were tentatively agreed upon. He, however, declined to sign on behalf of the carrier a waiver consenting to additional assessments, and the carrier itself later declined to do so and notified the Commissioner to that effect. Finally, on February 27, 1934 the Commissioner made a recomputation of income for the years 1920 and 1922, made necessary by the repeal of section 15a, and assessed the sums which, being paid to the Collector under protest, are the subject matter of this suit.

It is not denied that the computations of the Commissioner are correct, but it is asserted that. in 1934 he had no authority to levy the assessment. It is pointed out that section 1107 of the Revenue Act of 1932, 26 U.S.C.A. § 325 contemplated that the Interstate Commerce Commission should determine the amount recoverable from any carrier under section 15a and should certify this amount to the Commissioner after it had been paid; and that on the basis of this certificate the Commissioner should make an adjustment of the tax due which should become payable by the carrier upon notice if assessed within two years from the date of certification. But the power so conferred upon the Commissioner was taken away, it is said, by section 206 of the Emergency Act of 1933, 49 U.S.C.A. § 15b, wherein Congress repealed the recapture provisions of the Transportation Act, and provided for the recomputation of the income taxes due by the carriers, expressly recognizing at the same time the existing statutes of limitations. Therefore, it is contended, the Interstate Commerce Commission no longer had power to determine the amount of recoverable income due by a carrier or the power to issue the certificate under section 1107; and the Commissioner no longer had power to determine a deficiency based upon such a certificate. There is no showing that such a certificate was issued in the pending case, but the Commissioner, having first sought in vain the consent of the taxpayer, determined the deficiency without giving the taxpayer previous notice; and in so doing, it is said,

he not only failed to act in conformity with section 1107 but also ignored section 272 (a) of the Revenue Act of 1932, 26 U.S.C. A. § 272 note, which provides that no assessment of a deficiency of income tax may be made by the Commissioner unless he has mailed a notice of his determination to the taxpayer and until the expiration of a period of sixty days thereafter during which the taxpayer may file a petition with the Board of Tax Appeals for a redetermination, or until the final decision of the Board if such a petition is filed. The stipulation of December 8, 1932, signed by the taxpayer, was thought to be of no avail to the Commissioner because it referred expressly to section 1107 of the Revenue Act of 1932 and contemplated that any subsequent readjustment of the tax should be made in harmony therewith.

Following the same line of thought, the Railroad Company further contends that it was too late in 1934 to make an additional assessment against it. The time for the assessment of a deficiency for 1920 and 1922 was extended until December 31, 1927 by waivers. Before this date an assessment was made from which an appeal to the Board of Tax Appeals was taken; and the proceeding before the Board continued until it was terminated by the agreement of December 8, 1932. This agreement contemplated, it is said, that further adjustments of the income tax with reference to recoverable income should be made under the provisions of section 1107; but the Act of 1933 in effect repealed section 1107 and reaffirmed the statutes of limitations which bar the collection at this time of an additional tax for the year 1920 and 1922. Moreover, section 206 (b), 49 U.S.C.A. § 15b (b), as we have seen, provided that the act should not affect the liability for income tax of any carrier, if such liability had been determined by a final order of the Board of Tax Appeals. The order of the Board of December 14, 1932, which was passed upon the written stipulation of the parties and fixed the deficiency at the sum of $108,571.25, is said to be a final order and hence the Commissioner had no power to make the additional assessment.

From all of this the carrier concludes that Congress, by passing section 206 of the Act of 1933, improvidently destroyed the power which it had previously conferred upon the Interstate Commerce Commission and the Commissioner of Internal Revenue and made it impossible for them

to proceed under section 1107 of the Revenue Act of 1932, with the result that the stipulation of the parties based thereon no longer furnishes a legal basis for an assessment of taxes. While it is admitted that Congress would probably have acted otherwise had the effect of the later statute been foreseen, nevertheless the rule is invoked that in the administration of a taxing act, the letter of the law should be strictly adhered to. See Crooks v. Harrelson, 282 U.S. 55, 51 S.Ct. 49, 75 L.Ed. 156.

It seems obvious that this interpretation of the statutes should not be adopted if any room is left for a different conclusion. It cannot be supposed that Congress intended in 1933 to relieve the carriers from the exactions of the recapture act and at the same time to exempt them from taxes on the income restored. In 1932 Congress had made provision for the adjustment of the taxable income of carriers so as to exempt that portion of the income paid to the United States under the Transportation Act; and when in the succeeding year it reversed its policy of recovery, the only reasonable inference is that it intended to subject to tax the income which the carriers were then permitted to enjoy without restriction. Hence it was not the purpose in 1933 to destroy the power conferred upon the Commissioner in 1932 to determine a deficiency or overpayment of tax by a carrier in the light of the legislation governing recapture income, but rather to continue that power in order that the recomputation necessitated by the changed condition should be made. It is true that it was no longer necessary for the Interstate Commerce Commission to ascertain the amount of the income recoverable from the carrier or to certify to the Commissioner the amount thereof which the carrier had actually paid into the treasury. All uncertainty was at an end and the whole net income of the carrier became taxable as if the recapture statute had never been passed. But it was still necessary to compute the income tax, and to this end, we may reasonably conclude, the Act of 1933 was intended to modify the procedure presented by section 1107 of the Act of 1932 by substituting for the certificate of the Interstate Commerce Commission the final word of Congress that the income, no longer recoverable, should be taxed, and continuing the power of the Commissioner to assess the resultant deficiency of tax within two years of the passage of the amendatory act. It was within the power of Congress to confer this benefit upon the carrier, and to prescribe the conditions upon which the grant was made.

Nor do we think, as the taxpayer contends, that the assessment of additional income taxes for 1920 and 1922 was barred by the terms of the Act of 1933 which provided that the Act should not affect (1) the statutes of limitations with respect to the assessment and collection of income taxes; or (2) the liability for such taxes of a carrier if such liability had already been determined by the final judgment of a court or by the final order of the Board of Tax Appeals. The limitations and decisions referred to were manifestly those which had already become effective at the time that the act was passed. Section 206 (b) expressly provided that the income tax of the carrier should be computed as if section 15a of the Interstate Commerce Act had not been enacted, and there was of course no intent to restrict the redetermination to taxes for the five preceding years which fell within the ordinary period of limitation. The collection of income taxes from the carrier for the years 1920 and 1922 was not barred by limitations when the Act of 1933 was passed. The liability had been kept alive by the proceedings outlined above which culminated in the agreement of December 8, 1932, whereby the amount of the deficiencies was stipulated and paid, and the proceeding for review by the Board of Tax Appeals was terminated, subject, however, to a recomputation and reassessment of the tax by the Commissioner within the limited period provided by section 1107 of the Act of 1932. Thus the parties recognized that the order of the Board did not finally settle the controversy but contemplated further action on the part of the Commissioner; and since that action was taken within two years of the passage of the Act of 1933, it was not too late.

There is no substance in the suggestion of the carrier that the additional assessment by the Commissioner was invalid because he failed to give the sixty day deficiency notice prescribed by section 272 (a) of the Act of 1932. It is conceded that the Commissioner sent such a notice to the taxpayer on January 29, 1927, whereupon the taxpayer filed his petition for review of the assessment with the Board of Tax Appeals; and also that after the repeal of the recapture section, the Collector of Internal Revenue made demand on the tax-

payer for the sum which is the basis of this suit. Section 1107 of the Act of 1932 merely provides in this respect that notwithstanding any other provision of law, any deficiency assessed by the Commissioner thereunder shall be paid upon notice and demand from the Collector. The section of the act applicable to the special facts of the case was followed, and no other notice was required.

Affirmed.